UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

HARRY W. NEAL                                          CASE NO. 08-10136-DWH

BANK OF KILMICHAEL                                     PLAINTIFF

VERSUS                                                 ADV. PROC. NO. 08-1078-DWH

HARRY W. NEAL                                          DEFENDANT

OPINION

On consideration before the court is an amended motion for summary judgment filed in the above captioned adversary proceeding by the Bank of Kilmichael ("Bank"); a response thereto having been filed by the debtor/defendant, Harry W. Neal ("Neal"); and the court, having considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (I), and (O).

II.

On January 14, 2008, Neal filed a voluntary petition for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. In this proceeding, the bank seeks a determination that an indebtedness owed by Neal is non-dischargeable pursuant to §523(a)(6) of the Bankruptcy Code.[1]

---

[1] Hereinafter all cited Code sections should be considered as sections of the U.S. Bankruptcy Code unless specifically designated otherwise.

Neal, as President of Winona Elevator Co., Inc., ("Winona Elevator"), executed a universal note and security agreement in favor of the bank on October 17, 2007, in the amount of $465,080.00. The indebtedness was secured by a lien encumbering approximately 3,000 tons of liquid fertilizer stored at Winona Elevator. The amount due as of the petition date was $475,094.17. The terms of the note provided that Neal could only sell the fertilizer subject to certain conditions, such as remitting the proceeds from any sale to the bank.

On February 15, 2008, the First Meeting of Creditors in Neal's bankruptcy case was held. Neal testified that he was in charge of the operations of Winona Elevator and made substantially all of the decisions for the company. On that same date, at the First Meeting of Creditors held in the Winona Elevator bankruptcy case, Neal testified that he sold the subject fertilizer to customers of Winona Elevator, and admitted that he did not remit the sales proceeds to the bank.

### III.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Phillips v. OKC Corp., 812 F.2d 265 (5th Cir. 1987); Putman v. Insurance Co. of North America, 673 F.Supp. 171 (N.D. Miss. 1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct.

2548, 91 L.Ed.29 265 (1986); Leonard v. Dixie Well Service & Supply, Inc., 828 F.2d 291 (5th Cir. 1987), Putman v. Insurance Co. of North America, 673 F.Supp. 171 (N.D. Miss. 1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." Phillips, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." Phillips, 812 F.2d at 272.

The court notes that it has the discretion to deny motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed for the trier of fact. Kunin v. Feofanov, 69 F.3d 59, 61 (5th Cir. 1995); Black v. J.I. Case Co., 22 F.3d 568, 572 (5th Cir. 1994); Veillon v. Exploration Services, Inc., 876 F.2d 1197, 1200 (5th Cir. 1989).

IV.

Pursuant to Local Rule 18(A)(3) of the Uniform Local Rules of the United States Bankruptcy Courts for the Northern and Southern Districts of Mississippi, the bank filed its amended statement of uncontradicted facts. In Paragraph No. 4, the bank asserted the following:

> Pursuant to the terms and conditions of the Note, Defendant for and on behalf of Winona Elevator, agreed not to sell the fertilizer collateral subject to certain conditions, but if sold, it promised to make any sale payments jointly to Winona Elevator and Bank of Kilmichael ("proceeds"), so same could be accounted for and applied to the indebtedness due under the note.

In responding to the bank's Paragraph 4, Neal stated, "Admitted, as to the defendant acting in his corporate capacity." This admission by Neal, coupled with the admissions that he made during his testimony at the first meeting of creditors, establishes most of the elements required to prove a §523(a)(6) cause of action.

In the case of Raspanti v. Keaty (Matter of Keaty), 397 F.3d 264 (5th Cir. 2005), Chief Judge Carolyn King discussed the Fifth Circuit standard for maintaining a cause of action under

3

§523(a)(6) of the Bankruptcy Code, as follows:

> Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt incurred for willful and malicious injury by the debtor to another entity. 11 U.S.C. §523(a)(6)(2004). Section 523(a)(6) of the Bankruptcy Code specifically provides:
>
>> §523. Exceptions to discharge
>> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt...
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity....
>
> *Id.* The Supreme Court, in Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." The Fifth Circuit extended *Kawaauhau*'s reasoning in Miller v. J.D. Abrams, Inc. (In re Miller), 156 F.3d 598, 603 (5th Cir. 1998), and stated that "either objective substantial certainty [of injury] or subjective motive [to injure] meets the Supreme Court's definition of 'willful ... injury' in §523(a)(6)." (third alteration in original). The court in *Miller* went on to define the word "malicious" and specifically rejected that it meant an act without just cause or excuse. *Id.* at 605. Instead, the court defined "malicious" as an act done with the actual intent to cause injury. *Id.* at 606. The court noted that this definition is synonymous with the definition of "willful" and thus aggregated "willful and malicious" into a unitary concept. Thus, the court held that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Id.* at 606; *see also* Williams v. IBEW Local 520 (In re Williams), 337 F.3d 504, 509 (5th Cir. 2003).

397 F.3d at 269-70.

This court has applied the objective substantial certainty of harm standard in the case of

In re Smith, 302 B.R. 530 (Bankr. N.D. Miss. 2003), a proceeding involving the debtor's

wrongful conversion of annuity payments which had been pledged to a creditor.

Some courts might conclude that Neal's mere failure to remit the fertilizer proceeds to the

bank constitutes a conversion that meets the substantial certainty of harm standard. However, in

order to permit a more thorough analysis, there are a few questions that this court would like to

have addressed before making a final decision, to-wit:

4

A. The restrictiveness of the condition governing the sale of the fertilizer, which apparently is an inventory type asset, should be explained. For example, did the bank realistically expect this somewhat burdensome condition to be precisely performed by the borrower?

B. What effect or meaning should the court give Neal's admission to the bank's proposed uncontradicted fact when he responded, "[A]dmitted, as to the defendant acting in his corporate capacity."?

C. The court has observed that the personal guaranty executed by Neal in connection with the loan transaction is designated as "unsecured." Should this factor have any impact on the outcome of the proceeding?

D. Finally, what is Neal's explanation, if he has one, for selling the fertilizer without remitting any of the proceeds to the bank?

Because of the foregoing, the court is of the opinion that material factual issues remain in dispute at this time. As such, the bank is not entitled to a judgment as a matter of law.

A separate order will be entered contemporaneously herewith overruling the bank's motion for summary judgment.

This the 28th day of October, 2008.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE